# Steele *v.* The State.

*Indictment for Murder.*

| 61 | 213 |
| 102 | 180 |

1. *Repugnant statutes in same Code; how construed.*—Where repugnant statutes are incorporated in the same Code, the original statutes, their dates, and even their judicial interpretation will be consulted, to ascertain the legislative intent.

2. *Hard labor for county; when may be imposed.*—The court traces the origin of section 4296 of the Code of 1876, which authorizes the imposition of hard labor for the county for not less than *ten* years on conviction of murder in the second degree, and also of section 4450 of the same Code, which requires that "in all cases where the period of imprisonment or hard labor is for more than *two* years, the sentence must be to imprisonment in the penitentiary; and as the act from which the provisions of section 4450 was taken, was passed long after the statute incorporated in section 4296, and necessarily repealed inconsistent provisions of the Code and laws existing at its passage, full effect must be given to section 4450; and the result is, that the words "*or sentenced to hard labor for the county,*" are stricken out of section 4296 of the Code, and all other of its provisions, which fix as punishment for crime, imprisonment or hard labor for the county, for a longer period than two years.

3. *Evidence; what irrelevant.*—Where the quarrel arose about taking planks out of deceased's porch by defendant, and the latter when deceased asked why it was done, replied in an angry and threatening manner, without giving any reason for his act, leaving deceased entirely uninformed as to the reason, after which they separated, and defendant, about an hour afterwards, meeting deceased, without any subsequent altercation between them, or mutual blows, struck the fatal blow,—proof that defendant removed the plank

[Steele v. The State.]

by direction of the common superior of himself and deceased, having no tendency to influence the conduct of the deceased, or to justify or mitigate the act charged against the prisoner, is inadmissible.

4. *Res-gestæ; what not part of, and inadmissible in favor of prisoner.* The fact that the prisoner an hour after the difficulty, in which he struck the fatal blow, made complaint of being hurt himself, or that he next day made an affidavit or complaint before a magistrate, against the deceased, is no part of the *res-gestæ*, and is inadmissible on the prisoner's behalf, when tried for murder.

APPEAL from Circuit Court of Wilcox.

Tried before Hon. JOHN K. HENRY.

The appellant, Emanuel Steele, was indicted for the murder of James Herbert, *alias* Captain Herbert, found guilty of murder in the second degree, and sentenced, in accordance with the verdict, to ten years imprisonment at hard labor for the county.

The evidence shows that Steele and the deceased were both tenants of Mrs. Mathews, and lived on her plantation which was managed by one Forniss. About an hour before deceased was killed, he and the prisoner were heard quarreling. Deceased asked him, " why did you take up the plank from my floor?" Defendant replied, " I would have torn you up, if you had been there." Deceased replied, " If you talk that way, I will go and get the planks." One witness for the State testifies that in reply to this the prisoner said, " If you take the plank I will kill you." Another witness testified that after prisoner's remark that he would have torn deceased up if he had been there, the deceased replied, " If you can't give me more satisfaction, I will go and get my plank," when defendant replied if he did he would kill him. No blows passed at this time. Shortly after this, probably not over an hour, deceased went to some " bars," in the direction of the gin-house, and a " lick " was heard. It was then dark. Defendant was seen at the " bars" about this time. Witness went to the bars and found deceased staggering. He had received a blow on the left temple, from which he became speechless, and died two days afterwards. One witness for the State testified that he saw a blow pass at the bars, but he could not tell who struck it, but immediately afterwards he heard defendant say, " I will kill you." This witness and others testified, that " some plank from the piazza or gallery of the house occupied by deceased had been removed by the defendant and used in fixing the gin-house.'' The evidence showed that the " bars" spoken of, were in the direction where the gin-house was, from the place where the quarrel occurred. It was also shown by the State, that

after the difficulty prisoner went to a house about two miles off, called out his brother-in-law, told him he " had knocked Captain Herbert in the head, and asked witness to go and see about it."

It was proved in behalf of defendant that the plantation where the difficulty occurred, and on which prisoner and deceased both lived, belonged to 'Mrs. Mathews, and that she " had not rented the house to deceased, but only loaned it to him," during good behavior. It was shown that Forniss was manager, and had control of it and the property thereon. The bill of exceptions recites, " the said Forniss was then asked by defendant, whether or not at the time of said difficulty, he (Forniss) had given any order or direction to defendant in reference to any plank on said place?" The court on the objection of the solicitor, refused to allow the witness to answer, and defendant excepted. Forniss was then asked by defendant, " whether or not he had, previous to said difficulty, given the defendant any order or direction in reference to the use of any plank belonging to or connected with the house at that time occupied by deceased?" The court, on objection of the solicitor, refused to allow the witness to answer, and defendant excepted. Forniss having testified that defendant, after the blow was struck, had ridden on a mule to witness' house, which was four miles from the place where the difficulty occurred, the defendant asked " whether or not at that time defendant made any complaint of any injury to his person?" The court, on objection of the solicitor, refused to allow the witness to answer, and defendant excepted. The defendant introduced witnesses who testified that they had examined his person next day, and found bruises over the region of the kidney, and it was also shown that though before this prisoner was a hale and hearty person, he afterwards suffered from a *hematuria*, which physicians, who were examined, testified could be produced by such a blow, and also by exposure and cold.

The defendant then introduced one Valtz, a justice of the peace, who lived a few miles from the place where the difficulty occurred, and after proving by him that the defendant came to him on the morning of the next day after the difficulty, asked the witness : " Did or did not defendant when he came to your house make complaint before you?" The court, on the objection of the solicitor, refused to allow the witness to answer, and defendant excepted. A similar ruling was made and exception reserved to the refusal to allow this witness to state, " whether defendant then made any affidavit before him."

[Steele v. The State.]

The various rulings to which exception was reserved are now assigned as error.

R. GAILLARD, for appellant.—1. The evidence of the State put the prisoner in the attitude of a trespasser, and in the wrong in taking the plank. Why the plank was taken, thus became material. It also tended to rebut previous malice. It tended to throw light on the quarrel.—*Milburn v. State*, 1 Md. 1; *State v. Pellus*, 2 Halstead, 220; 1 Swann (Tenn.) 248; 19 Ohio, 302.

2. The complaint prisoner made of pain when he went to Forniss' house, was admissible evidence.—1 Phillips on Evidence, p. 182; Best, Law of Evidence, p. 887, note *a*; *Johnson v. The State*, 17 Ala. 618. If proof had been allowed as to the complaint prisoner made before the justice, it would have shown the *bona fides* of his former complaint of injuries, and have shown that he did not fear an investigation.

H. C. TOMPKINS, Attorney-General, *contra*.—1. The declarations of defendant to Mr. Forniss were clearly inadmissible. Such declarations may be admissible to prove the character of an injury, when the fact that there was an injury has been otherwise proven, but they can not be admitted in a case like this, where they would be the only evidence that deceased had struck defendant a blow. If they were, a defendant would be permitted to make evidence for himself. But this declaration was inadmissible, even if there had been other proof of an injury; for such declarations made when there has been an opportunity to think over the matter in reference to projected litigation, are inadmissible. The evidence that defendant had made a complaint, and taken out on the day after the difficulty, a warrant for his victim, whom he knew was at the very moment lying speechless and senseless from the effects of the blow he had given him, was even a more glaring effort to override the salutary rule that a person shall not be permitted to manufacture evidence in his own behalf than the other, and the court very properly refused to admit the proof of either fact.—1 Whar. on Evidence, § 268; *Hall v. State*, 40 Ala. 698.

2. The refusal of the court to permit the defendant to show that he had been authorized by Mr. Forniss to remove the lumber, was clearly not erroneous under the circumstances of this case. When defendant was approached by deceased about the matter, he gave no such reason therefor. The proof is undisputed that defendant's only answer, when

[Steele v. The State.]

questioned, was, "if you had been there, I would have torn you up." He did not claim to have had any authority from any one to do so. The proof fails to show any provocation whatever for the blow, and can the fact that defendant had instructions to remove the plank, in any way justify him in taking the life of deceased, or reduce the grade of his offense? He refused to give deceased his authority for doing so when called upon by him to do so; but now that he has deprived him of his life, seeks to justify it by showing that he had authority for removing the plank.

STONE, J.—The following two provisions are embodied in the Code of 1876: Section 4296. "Any person who is guilty of murder in the second degree must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than ten years, at the discretion of the jury." Section 4450, after declaring the different modes of punishment, contains this clause: "In all cases in which the period of imprisonment, or hard labor, is more than two years, the sentence must be to the penitentiary." These two clauses are incompatible with each other, and can not both be enforced. We know as fact that section 4296 of the Code is but a copy of section 3654 of the Code of 1867, which is itself a copy of section 112 of Stone & Shepherd's Penal Code, adopted February 23, 1866.—Pamph. Acts, 121. We know, too, that the clause of section 4450, Code of 1876, copied above, became law long after the Revised Code of 1867 was adopted, by force of the act "To provide for the punishment of persons convicted of crimes in certain cases," approved March 7, 1876.—Pamph. Acts, 287. The Code of 1876 did not become operative and binding, until thirty days after the Governor's proclamation. The proclamation was issued November 9th, 1877, and hence that compilation became the law of the land December 9th, 1877. From the date of the statute, March 7th, 1876, which declared that when "the period of imprisonment or hard labor is more than two years, the sentence must be to the penitentiary," till the day the Code went into effect, December 9th, 1877, there could be no sentence to hard labor for the county for a period longer than two years. The act of March 7, 1876, had, by necessary implication, repealed all provisions of our penal code, which authorized punishment by hard labor for the county, for a longer term than two years. This repeal changed a great many sections of the Code, and among the rest, it struck from section 3654 of the Revised Code, de-

claring the punishment for murder in the second degree, the words, "or sentenced to hard labor for the county." So that, for offenses committed during that interval, of the higher grades, and requiring imprisonment extending beyond two years, the sentence must of necessity have been to imprisonment in the penitentiary. What effect has the incorporation of both these provisions in the Code? We have seen they are repugnant, and can not both stand. Which shall yield to the other? It is our duty to carry into effect the intention of the legislature, to be gathered from their language. In *Thompson v. The State*, 20 Ala. 54, this court said, "the inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, often require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law-giver." And in *Smith v. Smith*, 19 Wise, 522, and *Bishop v. Schneider*, 46 Mo. 472, the several courts considered the effect of abridging and embodying statutes in a code, and consulted the original statutes, their date, and even their judicial interpretation, in arriving at a proper construction of the legislative intent. In each case, though the statutes had been changed in phraseology and in arrangement, they gave effect to them as framed by the legislature. As we have said, the two sections of the Code are incompatible, and we can not give effect to both. We think we carry out the legislative will by giving full effect to section 4450 of the Code, and holding, which we do, that the words, "or sentenced to hard labor for the county," are stricken out of all statutes which provide, as a punishment, imprisonment or hard labor for a period longer than two years. It results that the conviction in this cause must be reversed.

We do not think the Circuit Court erred in its several rulings on the introduction of evidence. The fact that Forniss, the manager, gave the defendant instructions to take plank from the piazza of the deceased, could not have shed any light on the circumstances of the killing, or the motive or animus of the deed. If all or any of the testimony bearing on this question can be relied on, the defendant did not inform deceased that he had been instructed by their common superintendent to take the plank. There was nothing in the language of the deceased, as testified to, to give offense, unless the tone or manner was insulting. Of this the record says:

[Mitchell v. Pitts and Henry.]

nothing. The reply of the accused was rude, and calculated to irritate. If, instead of the remark, " I would have torn you up if you had been there," the deceased had been informed that the planks were taken in pursuance of the orders of Forniss, the superintendent, it is not likely that further altercation would have ensued. But, according to the testimony, the parties separated after this, and the fatal blow was struck about one hour later. Only one witness saw the blow inflicted. Others testify to having heard it. No one speaks of mutual blows, or of any altercation or words at that time. We can not perceive any tendency in the testimony rejected, uncommunicated as it was to the deceased, calculated to influence the conduct of the deceased, or to justify or mitigate the act charged against the defendant.

That defendant, an hour or more after the blow was struck, made complaint, or complained of injury to his person, he had no right to prove in his own defense. The customary exclamations of present pain or suffering, as a general rule, are independent and primary evidence. The offer in this case does not fall within the rule. Nor can we perceive any principle, on which defendant's complaint to the justice, or affidavit made, could be made evidence for him. Reversed and remanded, but the prisoner will remain in custody until legally discharged.