# Zaner *v.* The State.

## *Indictment for Manslaughter.*

1. *Punishment of manslaughter; inconsistent statutory provisions.*—By statutory provision, a person "convicted of manslaughter in the first degree must, at the discretion of the jury, be imprisoned in the penitentiary, for not less than one nor more than ten years" (Code, § 3733); but, by another statute of later enactment (4492),"in all cases" in which the sentence to imprisonment is for twelve 'months or less, "the party must be sentenced to imprisonment in the county jail;" and this later statute must be construed as amending the former, and limiting the discretion of the jury, on a conviction of manslaughter in the first degree, and sentence to imprisonment for one year, as to the place of punishment.

2. *Sufficiency of verdict; remandment for trial de novo, on reversal.* A verdict which finds the defendant "guilty of manslaughter in the first degree, and assign[s] him to the penitentiary for twelve months," does not authorize a sentence to the penitentiary for that term ; and this court, reversing the judgment, will go beyond the verdict, and remand the cause for a new trial.

3. *Self-defense; charge ignoring provocation or fault.*—In a case of homicide, the defendant can not invoke the doctrine of self-defense, if he provoked the difficulty, or was at fault in bringing it on ; and when there is any evidence tending to show such provocation or fault on his part, a charge requested which ignores it, while asserting the right of self-defense, is properly refused.

FROM the Circuit Court of Cleburne.

Tried before the Hon. LEROY F. BOX.

The indictment in this case charged that the defendant, Samuel C. Zaner, "unlawfully and intentionally, but without malice, killed Walter D. Bell, by shooting him with a pistol." The homicide occurred about dark, on the evening of January 8th, 1890, in the town of Heflin, in said county. The deceased was a paralytic, and unable to stand on his legs; and as he was sitting in a chair in the door-way of his shop, holding a Winchester rifle across his lap, the defendant passed by, who was the marshal of the town, and who had a policeman's club in his hand, and a revolver under his arm. Some few words passed between them, when each fired at the other; the defendant being struck in the thigh with a rifle-ball, and discharging five or six shots from his pistol at the deceased, which resulted in his death. As to what was said at the time, a witness for the State testified: "Deceased told me in his dying declarations, that he was sitting in his door, with his gun in his hand, or lap, when the defendant came walking

down the side-walk; and, as defendant was passing, he said to him, ' Is that you, Rad?' addressing defendant; that defendant said ' Yes,' and rushed on me with his pistol, and shot me. I tried to shoot. I may have shot first.'" The defendant testified in his own behalf, that as he was passing the shop of the deceased, the latter hailed him, and asked, "Is that you, Rad Zaner?" to which he replied, "Yes;" that the deceased then said, "Rad, it is time for us to settle our matters," and at once threw up his gun and fired, the shot striking him in the leg, and knocking him down; that he soon rallied, caught hold of an awning-post, and fired as quick as he could. There was evidence showing ill-feeling between the parties, or "bad blood," as one of the witnesses expressed it, growing out of the defendant's threat, a few nights before, to arrest several persons at the shop of the deceased for disorderly conduct; and evidence was adduced by the defendant of threats made against him by the deceased, in connection with that matter. One Etheridge, a witness for the State, testified that, as he passed the shop of the deceased, ten or fifteen minutes before the shooting, he found him sitting in the door-way with his rifle across his lap; that deceased said, "He intended to sit there until he shot Zaner;" that he, witness, met defendant soon afterwards, and told him of this threat; and that defendant replied, "He reckoned Bell would not shoot." The defendant testified, also, that he was making his regular rounds as marshal, and was armed as usual.

"The foregoing being substantially all the evidence," as the bill of exceptions states, the court charged the jury at the instance of the State: "If the jury believe from the evidence that Zaner walked by Bell's door, with his club swinging in his hand, and his pistol under his arm; and that he went there, not in the discharge of his duty as marshal, but for the purpose of provoking Bell to begin the difficulty, and, by so doing, did provoke Bell to begin the difficulty; then the defendant can not invoke the doctrine of self-defense." The defendant excepted to this charge, and he also excepted to the refusal of the following charge, which was asked by him in writing: "If the jury believe from the evidence that the deceased shot first; and that the circumstances were such as to create in the mind of the defendant a reasonable belief, and did create in his mind a reasonable belief, that the deceased would immediately shoot again; and that the defendant was in danger of the loss of his life, or of great bodily harm, and that an attempt to retreat would place him in as great, or greater danger; then the defendant had the right to invoke the law of self-defense, and is not guilty as charged."

[Zaner v. The State.]

JAS. AIKEN, and T. J. BURTON, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

CLOPTON, J.—The court adjudged that appellant be imprisoned in the penitentiary for one year, in accordance with the verdict of the jury, which is in the following language: "We, the jury, find the defendant guilty of manslaughter in the first degree, and assign him to the penitentiary for twelve months." The discretion to fix the place of imprisonment was exercised by the jury under section 3733 of the Code, which declares: "Any person who is convicted of manslaughter in the first degree must, at the discretion of the jury, be imprisoned in the penitentiary for not less than one, nor more than ten years." Section 4492, so far as applicable to the judgment rendered in this case, provides: "In all cases in which imprisonment or sentence to hard labor is twelve months or less, the party must be sentenced to imprisonment in the county jail, or to hard labor for the county." In *Gunter v. State*, 83 Ala. 96, it was held, that the act of March 7, 1876, prescribing the legal punishments in this State, which is comprised in section 4450 of Code of 1876, being of later date, amended section 4303 of the same Code, so as to modify the discretion thereby reposed in the jury, and to limit it, when the verdict is manslaughter in the first degree, to fixing the period of punishment, leaving to the court to adjudge its place and character. In construing inconsistent or repugnant sections of a Code, the same rule applies as to a repeal by implication, which controls the construction of original statutes of different dates. The sections transcribed from later statutes amend or modify the sections transcribed from earlier statutes, so as to produce an agreement between them. Sections 4303 and 4450 of the Code of 1876 having been brought forward and incorporated in the present Code as section 3733 and 4492, the latter section must be construed, under the rule stated, to amend section 3733, so as to modify the discretion of the jury in the respects stated in *Gunter v. State, supra.—Steele v. State*, 61 Ala. 213; *State v. Herndon*, 74 Mo. 410; Endlich on Stat. § 183. The sentence of defendant to the penitentiary for one year is without authority of law.

Notwithstanding this, it is insisted, that as the verdict of the jury finds defendant guilty of manslaughter in the first degree, and fixes the term of sentence at twelve months, that portion prescribing the place of imprisonment in no way interferes with the power of the court to adjudge the legal sentence as to the place and nature of the punishment, and should be re-

garded as surplusage, or void, and that the judgment should be reversed back to the conviction only, and the cause remanded, not for a new trial, but that the court may render a proper sentence. This case is distinguishable from those cases in which that course was pursued, in this: in those cases, there was either no verdict of a jury, or the verdict presented no obstacle to the court adjudging the place and character of punishment prescribed by the law. For instance, in *Herrington v. State*, 87 Ala. 1, no jury was called; the defendant pleaded guilty to the charge of embezzlement, and thereupon the court sentenced him to imprisonment in the penitentiary for the term of one year, which was unauthorized by the statute. Also, in *DeBardeleben v. State*, 50 Ala. 179, the offense charged being grand larceny, the jury returned a general verdict of guilty, which was followed by a judgment of conviction, and sentence to two years imprisonment in the county jail. It was held, that the statute did not authorize in such case punishment by imprisonment in the county jail. In each of the cases, the sentence only was reversed, leaving the judgment of conviction to stand, and the cause remanded, that the court might pronounce a proper sentence. The proceedings were regular and proper, up to, and including the judgment of conviction; the error consisted only in adjudging the place and nature of the punishment.

It may be that, where the jury has no discretion as to the place, nature, or term of the punishment, and the authority to adjudge it resides in the court, if the verdict finds the defendant guilty, and also designates the place, character and term of the punishment, the same would be regarded as surplusage, or void, and as presenting no obstacle to the court adjudging the proper sentence. An informal verdict is ordinarily sufficient to sustain a judgment of conviction and sentence. But, where the jury has a discretion as to the term of the sentence, and they fix it in connection with, and based upon a prescribed place and character of punishment, that portion of the verdict fixing the place can not be regarded as surplusage, or the verdict as merely informal. *Non constat*, the place and nature of the punishment may have induced the jury to agree upon the period fixed in the verdict. A verdict which exceeds the limits of the law, or is unauthorized, or so irregular and illegal that it can not be made the predicate of a legal sentence, is incapable of sustaining a judgment of conviction, and a sentence following the verdict.—*Gunter v. State, supra.* It has been repeatedly held, that a verdict of guilty under an indictment for murder, not expressly finding the degree of the offense, though fixing the punishment at imprisonment in the

[Zaner v. The State.]

penitentiary for life, is fatally defective, and does not warrant
the sentence declared in the verdict.—*Dover v. State*, 75 Ala.
60.   When the sentence of the court follows an irregular and
unauthorized verdict, the error reaches beyond the sentence, to
the verdict itself, and a reversal of the sentence back to the
conviction does not cure the error.   In such case, the judgment
should be reversed, and the cause remanded for a new trial.

The charge given by the court asserts a correct proposition
of law.   In view of the evidence tending to show that defend-
ant was cautioned not to go by the shop of deceased, and of
his dying declarations, which were admitted without objection,
we can not say that the charge authorizes the jury to infer
facts of which there is no evidence. And, in view of the same
evidence, the charge requested by the defendant, and refused,
is defective in that it ignores the question, whether defendant
provoked, or was at fault in bringing on the difficulty.

For the error mentioned, the judgment must be reversed,
and the cause remanded for a new trial.

Reversed and remanded.