654 So.2d 892 (1995)
MISSISSIPPI CASINO OPERATORS ASSOCIATION
v.
MISSISSIPPI GAMING COMMISSION; Pine Hills Development Partnership, d/b/a Gold Strike Resort and Casino; Lone Star Pine Hills Corporation; and Family Lands, Limited Partnership.
No. 94-CC-00235-SCT.
Supreme Court of Mississippi.
April 13, 1995.
R. David Kaufman, P. Brooks Eason, Brunini, Grantham Grower & Hewes, Jackson, for appellant.
Alan W. Perry, Forman Perry Watkins & Krutz, Jackson, Ben H. Stone, Scott E. Andress, Eaton & Cottrell, Boyce Holleman, Gulfport, Tim C. Holleman, Gulfport, Frank D. Montague, Jr., Montague Pittman & Varnado, Hattiesburg, for appellee.
En Banc.
BANKS, Justice, for the Court:
Here we are called upon to address the limits of the discretion vested in the Mississippi Gaming Commission with respect to the approval of sites for casino gambling operations on the Mississippi Gulf Coast. More specifically, we are asked to decide whether the Commission may lawfully approve a site not presently on water, where the building plans call for the dredging of an inlet and protected cove for placement of the casino on water thus created. We find that the proposed site is not a lawful one under either *893 the statute as reasonably interpreted or the prior regulatory rule. Accordingly, we vacate the order of the Commission approving the site.

I.
Pursuant to the Mississippi Gaming Control Act, Lone Star and Gold Strike submitted applications to the Mississippi Gaming Commission (hereinafter Commission) for gaming licenses on a proposed man-made artificial watercourse, located on the shore of the eastern side of the boundary between Hancock and Harrison counties. Lone Star and Gold Strike proposed to divert waters from the Bay of St. Louis northward through two man-made channels 45 to 65 feet wide, running a quarter of a mile inland to an artificial cove carved out of dry land in Harrison County. The Commission approved the site, finding that the location was in accordance with the other sites previously approved and would serve the public interest in safety, environmental protection, competition and commercial development. Aggrieved, the Mississippi Casino Operators Association (hereinafter MCOA) perfected a timely appeal to the circuit court.[1] The MCOA argued that the decision was contrary to Miss. Code Ann. § 97-33-1(a) and the Commission's own duly promulgated Regulation No. 2, because the proposed site was not within the waters south of the southern most counties. The circuit court affirmed the Commission's decision to approve the site reasoning that, under the Mississippi Gaming Act, the Commission was vested with the authority to determine the propriety of gaming sites, and this appeal ensued.

II.
In 1990, the Mississippi Legislature authorized gaming along the shores of the Gulf Coast and in counties bordering the Mississippi River. See Miss.Code 97-33-1(a), (b). More specifically, in the River counties, the Mississippi Code authorizes gaming "[o]n a vessel as defined in Section 27-109-1 whenever such vessel is on the Mississippi River or navigable waters within any county bordering on the Mississippi River, and in which the registered voters of the county in *894 which the port is located have not voted to prohibit such betting, gaming, or wagering on vessels as provided in Section 19-3-79." See Miss. Code Ann. § 97-33-1(b). (Emphasis Added). In the Gulf Coast counties, the Mississippi Code authorizes gaming "[o]n a cruise vessel as defined in Section 27-109-1 whenever such vessel is in the waters within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) most southern counties in the State of Mississippi, and in which the registered voters of the county in which the port is located have not voted to prohibit such betting, gaming or wagering on cruise vessels as provided in Section 19-3-79." Miss. Code Ann. § 97-33-1(a). (Emphasis Added).
Section 97-33-1(a) of the Mississippi Code fails to define with specificity the location of "waters ... south of the three (3) most southern counties in the State of Mississippi." Notably, however, unlike the provisions regarding gaming on the Mississippi River, the Gulf Coast gaming provision does not expressly state that gaming is allowed on all "navigable waters" within the counties which border on the Gulf of Mexico.
We have said that this Court, when construing a statute, must first look to the words of the statute. Pinkton v. State, 481 So.2d 306, 309 (Miss. 1985). Our goal, however, is to "adopt that interpretation which will meet [the] real meaning, though such interpretation may beyond or within, wider or narrower, than mere letter of statute." Gambrill v. Gulf States Creosoting Co., 216 Miss. 505, 62 So.2d 772 (1953).
Here, a literal reading of the statute would mean that gaming on vessels is prohibited as far south as the Gulf Islands, since these islands are part of the most southern counties. See Miss. Code Ann. § 19-1-45; Miss. Code Ann. § 19-1-47; Miss. Code Ann. § 19-1-59. Indeed it is impossible to be both south of the southern counties and within the State of Mississippi because those county lines and the state lines are coterminous. A strict interpretation of the statute, therefore, would render all current and future sites, other than those in river counties, illegal. This is not a reasonable interpretation of the statute.
In an attempt to adopt rules consistent with a reasonable interpretation of the statute, the Commission duly promulgated Regulation No. 2 which gives definition to the words "waters south of the three most southern counties." The regulation states:
Cruise Vessels:
Waters within the State of Mississippi which lie adjacent to the three (3) most southern counties of the State. In addition to the Mississippi Sound, this would include St. Louis Bay, Biloxi Bay and Pascagoula Bay. However, the rivers and bayous leading into these bays, including, but not limited to the Jourdan River, Wolf River, Bernard Bayou, Tchoutachabouffa River, Pascagoula River and Escapatawpa are not within the authorized area. In determining where the river ends and the bay begins, an imaginary line shall be drawn from the foremost land mass at the intersection on the river and bay, straight across the river to the foremost land mass of the intersection on the other side.
As the circuit court correctly stated, the Mississippi Gaming Control Act has vested the Commission with the authority "to determine the locations of casinos which wish to build in the Gulf Coast area." Miss. Code Ann. 75-76-7. This authority is limited, however, and must not exceed the authority prescribed by the legislative enactment. Mississippi PSC v. Miss. Power & Light, 593 So.2d 997, 998 (Miss. 1991).
The canal upon which Lone Star and Gold Strike propose to situate a gaming vessel is to be man-made. Neither the statute, nor Regulation No. 2 speaks to artificial inlets. Therefore, it is argued that the proposed site is permissible. Regulation No. 2 prohibits gaming in the rivers and streams emptying in the bay, which are naturally occurring inlets. We see no rational distinction between a naturally occurring inlet and the artificial one Lone Star and Gold Strike propose to build. By allowing the construction of artificial inlets for the purpose of gaming sites, the Commission has effectively contradicted its own Regulation No. 2. We hold that Regulation No. 2, limiting permissible sites to the Mississippi Sound, St. Louis *895 Bay, Pascagoula Bay and the Biloxi Bay is a reasonable interpretation of the statute. Here, the proposed site approved by the Commission is clearly not within any of these areas. Moreover, if anything is clear in the statute, an approved site must be on water. The site here in question is not on water. It is on land which the applicants propose to dredge.
It is argued that other licenses have been granted for operations in man-made inlets and that whether these inlets were in existence at the time that the statute was passed should not be determinable as to whether a man-made inlet is a legitimate site. None of the orders granting these licenses were appealed and they are not presently before us.
We, therefore, hold that the proposed gaming site of Gold Strike and Lone Star is unlawful and the Commission's order approving the site is vacated.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The operators actually filed a civil complaint invoking the jurisdiction of the circuit court under Miss. Code Ann. 1972 § 75-76-121 and Miss. R.Civ.Pro. 57 and 65. In response, the commission confessed jurisdiction under Miss. Code Ann. 1972 § 75-76-121 and sought dismissal of the claims under the rules of civil procedure. The case proceeded as an appeal under Section 75-76-121. While that code section appears to grant a general authority to appeal orders of the gaming commission, its placement by the codifiers in that area of the code dealing with disciplinary matters and the language of Miss. Code Ann. 1972 § 75-76-127 requires some discussion.

Section 75-76-127(2) provides:
The judicial review by the circuit and Supreme Courts afforded in this chapter is the exclusive method of review of the commission's actions, decisions and orders in disciplinary hearings. Judicial review is not available for actions, decisions and orders of the commission relating to the denial of a license or to limited or conditional licenses. Extraordinary common law writs or equitable proceedings are available except where statutory judicial review is made exclusive or is precluded or where the use of those writs or proceedings is precluded by specific statute. (Emphasis supplied.) Succeeding sections of the code, however, refer to the "procedures for disciplinary actions in Sections 75-76-103 through XX-XX-XXX," Miss. Code Ann. 1972 § 75-76-135 (Revised 1991), and "judicial review" as "prescribed by 75-76-121 through XX-XX-XXX." Miss. Code Ann. 1972 § 75-76-137 (Revised 1991).
It is, of course, the statute which controls, not its codification. Cole v. State, 608 So.2d 1313 (Miss. 1992) (Robertson, J., dissenting); Mayfield v. State, 612 So.2d 1120 (Miss. 1992) (Banks, J., dissenting). See also Monacelli v. Grimes, 99 A.2d 255 (Del. 1953); Rodgers v. Meridith, 274 Ala. 179, 146 So.2d 308 (1962). Furthermore, acceptance of the codification manuscript by the Attorney General is not conclusive of the legislative intent. Miss. Code Ann. § 1-1-51 (Supp. 1993). A fair reading of the statutory scheme would indicate that Sections 75-76-121 through XX-XX-XXX might be better grouped under the sub-heading "[JUDICIAL REVIEW]" rather than "[DISCIPLINARY ACTIONS]". Of course, none of these groupings inserted by the publishers to facilitate reading the code are in the original law. See Laws, 1990 Ex Sess, ch. 45, § 61 (approved June 29, 1990).
Section 75-76-127 makes the statutory appeal scheme exclusive for disciplinary actions and denies any appeal from the denial or limitation of a license. That section does not speak to the grant of a license and we have not found a section which explicitly grants or denies appellate review of such orders. For present purposes, it should suffice to say that we accept the commission's interpretation that judicial review of its decisions granting licenses or approving sites is authorized by Section 75-76-121.