219 So.2d 880

**Ex parte ACK RADIO SUPPLY COMPANY OF GEORGIA.**

**6 Div. 575.**

Supreme Court of Alabama.

Feb. 13, 1969.

Jas. L. Shores, Jr., of Johnston & Shores, Birmingham, for petitioner.

Corretti, Newsom & Rogers, Birmingham, for respondent.

MERRILL, Justice.

Petitioner, ACK Radio Supply Company of Georgia, filed an original petition for writ of prohibition in this court, seeking to prohibit Honorable William C. Barber, Circuit Judge, from proceeding further in the cause of Tingley v. Satellite Broadcasting Company on the ground that the circuit court had lost jurisdiction.

On February 9, 1965, one Glenn V. Tingley filed a bill of complaint against Satellite Broadcasting Company, seeking to enjoin the Broadcasting Company from cutting off Tingley's radio broadcasts over its radio

station. A temporary injunction was issued by Judge Barber and, on May 18, 1965, he denied motions to discharge and to dissolve the temporary injunction, and overruled demurrers of the Broadcasting Company. On June 1, a decree was entered extending the time for the filing of an answer.

No further proceedings appear of record until March 7, 1966, when Judge Barber erroneously and inadvertently signed a decree of dismissal for want of prosecution, which reads:

"The foregoing cause was regularly set on the printed docket on November 24, 1965 and upon the call thereof a request was made that the Court pass said cause and allow the parties thereto until February 25, 1966 for submission of said cause for a final decree, and upon said oral motion the Court entered an order setting the cause for final submission within the time requested. It now being made to appear that said cause was not submitted for final decree in accordance with said order the Court is of the opinion that said cause should be dismissed. It is therefore,

"ORDERED, ADJUDGED and DECREED by the Court that this cause be and it is hereby dismissed and the costs are hereby taxed against the Complainant, for the collection of which let execution issue."

The rendering of this decree was not known to counsel for Tingley or the Broadcasting Company. They had been trying to negotiate a settlement and had kept Judge Barber advised and, on April 19, 1966, Judge Barber made the following order:

"Come the parties in the above captioned suit, through their respective counsel, and show unto the court that the parties have reached a temporary solution of the matters involved in this litigation and that there is a possibility that the differences beween the parties will be finally resolved without the necessity of any further pleading or hearings in this court.

"For that reason, the court finds that it is in the best interest of the parties that this suit be held in abeyance and that no further pleading shall be required by any party until further notice from this court.

"It is therefore ordered, adjudged and decreed that this cause is hereby continued to be reset for the reasons set forth above."

On December 21, 1967, the Broadcasting Company filed an answer and cross-bill to Tingley's bill, a cross-complaint against petitioner, and requesting that petitioner be brought into the case. The theory on which petitioner, ACK, was made a party was that the Broadcasting Company had purchased the radio station from ACK and the contract for sale contained a warranty clause setting forth all obligations to be assumed by the Broadcasting Company, and specifically stating there were no liabilities other than those listed. Therefore, if the court should decree that the Broadcasting Company must broadcast Tingley's programs without charge for air time, then ACK should respond to the Broadcasting Company in damages in an amount equal to the value of the air time used by Tingley.

On January 16, 1968, Judge Barber entered the following order:

"The Register of the Court has called the attention of the Court to the fact that a decree of dismissal was entered in this cause on March 7, 1966. This decree was entered by mistake and inadvertence and is in conflict with the order of this Court dated April 19, 1966, holding the matter in abeyance and suspending the time for the filing of any further pleadings in the cause.

"It has also been called to the attention of the Court by counsel for complainant and respondent that the temporary solution of the matters involved in this litigation referred to in the Court's order of April 19, 1966, has expired and that there now exists a need for the final resolution of the controversies.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the order of this Court dated March 7, 1966, is abrogated and held for naught, nunc pro tunc, and respondent is given leave to file its answer, cross bill and cross complaint forthwith."

Petitioner was served with the cross-complaint on January 22, 1968, and the then counsel for petitioner, not the same as counsel in this proceeding, filed a demurrer to the cross-complaint on February 21, 1968, which did not raise the point of jurisdiction of the court, but does raise other matters.

Petitioner argues that the trial court lost jurisdiction of the cause thirty days after March 7, 1966, the date of the order of dismissal under Tit. 13, § 119, Code 1940, which provides, in pertinent part:

"After the lapse of ten days from the rendition of a judgment or decree, the plaintiff may have execution issued thereon, and after the lapse of thirty days from the date on which a judgment or decree was rendered, the court shall lose all power over it, as completely as if the end of the term had been on that day, unless a motion to set aside the judgment or decree, or grant a new trial has been filed and called to the attention of the court, and an order entered continuing it for hearing to a future day; * * *."

Prior to the original enactment in 1915 of what is now Tit. 13, § 119, the judgments of the courts were in the breast of the judge until the final adjournment of the term, and might be set aside or modified during the term. Tit. 13, § 119, now limits the court to thirty days from final judgment.

It will be noted that § 119 provides that "the court shall lose all power over it, *as completely as if the end of the term had been on that day.*" Term time now means thirty days after rendition of judgment. Sisson v. Leonard, 243 Ala. 546, 11 So.2d 144. When the "term" was the time limit,

this court, said, in Kidd v. McMillan, 21 Ala. 325:

"It is very clear, that the court has no authority to set aside a final judgment after the term is closed at which it was rendered. Noland v. Lock, 16 Ala. 52; Walker v. Hale, ib. 26. But if the parties agree that it may be set aside and tried again, and the court, in pursuance of such agreement, does set the judgment aside, and proceeds again to try the cause, the second judgment is not void *for want of jurisdiction.* Lee v. Houston, decided at the last term [20 Ala. 301].

"But the question before us is, whether the court is bound by law, even when the parties consent, to set aside a final judgment, at a term subsequent to its rendition, and re-try the cause. We think not. There must be a time when litigation must end, and that time is, after the adjournment of the court at which the final judgment was rendered. If the court was bound to try the cause again, at the request of the parties, there would be no end to litigation, if they saw proper to set aside the judgment rendered, and try the cause again; and thus the courts of the country would be compelled from time to time to re-try causes, to suit the caprice or whims of the parties. This, in my judgment, the courts are not bound to do. True, if it is done, we will not hold that the court acted without authority or jurisdiction. But we think the court may refuse to re-try cause without violating any principle of law."

In Ex parte Alabama Fuel & Iron Co., 193 Ala. 496, 69 So. 115, this court, after quoting part of the above from 21 Ala. 325, said:

"The fundamental principle of procedure involved in that decision is the same as that of a line of cases we have in which it has been held that, after a case has been put out of court by an order irregularly taken, the party who would

profit by the order may put the cause again within the power of the court, in effect, by appearing at a subsequent term and actively participating in its litigation as a cause properly pending in court. Hair v. Moody, 9 Ala. 399; Coltart v. Moore, 79 Ala. 361. But further than this the court has never gone."

Every court must have authority to correct its own entries, so as to make them speak the truth, even after adjournment of court, on sufficient evidence. The source of this inherent power is justice, and therefore the courts must have some discretion in altering their records after the time when they are said to import absolute verity. Gorum v. Samuel, 274 Ala. 690, 151 So.2d 393, and cases there cited.

To summarize, prior to the 1915 statute, now Tit. 13, § 119, the trial judge could change his mind about the result of a case anytime within the term. Under the statute, that time was limited to thirty days from final judgment. But that statute does not conflict with the court's inherent power to correct its own entries so as to make them speak the truth.

In the instant case, counsel for Tingley and counsel for the Broadcasting Company have filed affidavits that they were negotiating before and after March 7, 1966, the date of the dismissal order, and that when they jointly asked Judge Barber to enter the order of April 19, neither they nor Judge Barber were aware that the decree of dismissal of March 7 had been entered, and at no time had either side taken any position other than that the cause was still pending.

We quote from the affidavit filed by Judge Barber:

"The solicitors for the complainant and the respondent in that cause had numerous conferences with your affiant, particularly between the period of November, 1965, and April, 1966. Your affiant was aware that the solicitors for the parties were attempting to effect a settlement of their differences through negotiation. Sometime prior to March 7, 1966, your affiant was informed by the solicitors for the parties in that cause that they had tenatively reached an agreement and that they had agreed that no further pleadings would be required of either party pending their further negotiations. Your affiant urged the solicitors for the parties to reduce their agreement to writing on several occasions.

"It has been the custom in the Circuit Court of the Tenth Judicial Circuit In Equity for many years to publish and set a docket of pending cases in which little or no activity of record has taken place for some time, this docket being frequently referred to as the 'horse docket'. Apparently, the case between Glenn V. Tingley and Satellite Broadcasting Company appeared on the 'horse docket' and was continued for further pleadings to be filed within a specified time on or before February 25, 1966. As stated hereinabove, your affiant was conferring with the solicitors for the parties during that period of time. It is the custom in the Circuit Court for the Register to prepare a standard form Decree of Dismissal in the event solicitors fail to file pleadings in cases which appear on the printed 'horse docket'. The standard form Decrees of Dismissal are presented to your affiant and other Circuit Court Judges in Equity in large numbers and they are signed by the Judge. Through error of the Register, a Decree of Dismissal was prepared in this cause and was placed before your affiant along with a large number of other Decrees of Dismissal and through error your affiant signed the Decree of Dismissal in this cause on March 7, 1966. The solicitors for the parties and your affiant had no intention of permitting this case to be dismissed as we had all agreed prior to March 7, 1966, that no further pleadings would be required pending a solution of the differences between these parties. Within thirty days after March 7, 1966, the solicitors for the parties informed your affiant that they had

reached a tenative agreement and your affiant urged them to put that agreement in writing. Their agreement was reduced to writing and on April 19, 1966, your affiant entered a Decree which, among other things, stated that no further pleadings would be required in this cause pending further orders of the court. At all times since this cause was initially filed in the Circuit Court of the Tenth Judicial Circuit of Alabama, In Equity, the solicitors for the parties and your affiant have considered this case to be active and pending and your affiant has continued to exercise jurisdiction of the cause with the consent and agreement of the solicitors for the parties."

At the time Judge Barber rendered the decree setting aside the dismissal decree of March 7, 1966, the only two parties in the cause were Tingley and the Broadcasting Company. The cross-complaint to bring ACK, the petitioner, in as a party had been filed but had not been served. Thus, *all* the parties and the trial judge consented to the setting aside of the decree and there was no objection as there was in the case of Ex parte Alabama Fuel & Iron Co., 193 Ala. 496, 69 So. 115.

Authorities from other jurisdictions on this subject are listed in an annotation in 3 A.L.R.3d 1194, § 3, including Roin v. Checker Taxi Co., 36 Ill.App.2d 447, 184 N.E.2d 736, and Berry v. Chitwood, Mo., 362 S.W.2d 515, 3 A.L.R.3d 1185.

 While we do not make the point of waiver of jurisdiction a primary reason for our holding in this case, we note the rule that the filing of a demurrer which was not based solely on the matter of jurisdiction of the person constitutes a general appearance; and a plea to the jurisdiction should be filed before a general appearance or there is a tacit admission that the court has a right to judge. W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375, and cases there cited.

We come now to the question of whether the court could amend nunc pro tunc. Equity Rule 63 provides:

"Clerical mistakes in decrees, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party after such notice, if any, as the court orders."

Title 7, §§ 566 and 567, provide for amendment of decrees and judgments nunc pro tunc "when there is sufficient matter apparent on the record or entries of the court to amend by."

 We have held that § 567 authorizes the amendment of a final judgment nunc pro tunc to correct a clerical error of the judge as well as that of the clerk of the court. Tombrello Coal Co. v. Fortenberry, 248 Ala. 640, 29 So.2d 125. And in Capps v. Norden, 261 Ala. 676, 75 So.2d 915, we said that clerical errors under § 567 and Equity Rule 63 are not those alone which the clerk makes, but they include all such errors, being matters of record, whether committed by the court or counsel, to which the judicial sanction and discretion cannot be said reasonably to have been applied. Such right exists only "when there is sufficient matter apparent on the record or entries of the court to amend by."

 Here, the record showed contradictory orders in the same cause. The trial judge knew that he had not intended to dismiss this case for want of prosecution because it was being prosecuted and he was conferring with counsel for both sides about it. The register erroneously prepared the decree of dismissal and the judge erroneously signed it. We hold that these errors, not known to counsel until much later, were errors of record to which judicial sanction and discretion cannot be said reasonably to have been applied; that the trial court had inherent power to make the record speak the truth; and that it did not err in setting aside the decree of dis-

missal, all parties consenting and requesting such action.

Writ denied.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.