PER CURIAM.
This appeal from an order of the Alabama Public Service Commission (APSC) relates to procedural issues and does not involve the substantive merits of the general rate case in which these circumstances arose. Rather, this Court must examine the jurisdiction of the APSC and determine whether the Commission had the authority to grant a motion for rehearing on a single issue of APSC Docket No. 18882 during the pendency of an appeal to this Court of the Commission’s final order in the “General Rate Case” portion of Docket No. 18882.
Under the provisions of a 1983 decision (United States v. American Tel. & Tel. Co., 552 F.Supp. 131 (D.D.C. 1982), aff’d sub nom., Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983)), Bell telephone companies were required to provide private long distance carriers access to Bell connections comparable to the access provided to AT & T. An access rate structure was established by the Federal Communication Commission (FCC) for the private carriers and was designed to preserve fair competition during the period of implementation of the equal access. The FCC also determined that AT & T should be subject to a premium access charge because of higher quality access available only to AT & T during the implementation period. AT & T, then, was required to pay a 55% differential charge which reflected the inequality between the access service available to AT & T and that available to the private companies during the access implementation period.
In October 1983, in anticipation of the January 1, 1984, AT & T divestiture, South Central Bell (SCB) filed an application with the APSC requesting new rates and charges and asserting a need for additional revenue in 1984 (APSC Docket No. 18882). SCB alleged revenue losses from intrastate toll charges and customer premises equipment (CPE) revenues due to the results of the upcoming divestiture, but proposed to recoup some of this lost revenue through access charges to AT & T and the private carriers.
The APSC conducted hearings on the CPE and access charge rates issued in November and December of 1983. On December 22, 1983, the APSC entered an interim *702 order approving an interim SCB/AT & T access charge agreement but specifically deferred to later hearings consideration of the alleged revenue losses from CPE. During the early part of 1984, the APSC heard testimony concerning CPE, access charges, and the additional revenues requested by SCB attributable to other matters.
On May 24, 1984, SCB filed proposed access tariffs reflecting the interstate access tariffs that had been approved by the FCC. This tariff filing was docketed as part of APSC Docket No. 18882. By “Further Report and Order” dated June 11, 1984, the APSC tentatively approved the tariffs filed by SCB and further ordered:
“The commission will continue to receive and review testimony concerning access charges and will hear oral arguments upon the motion of any party to this inquiry. The Commission will also receive any written comments filed prior to June 23, 1984, and any reply comments filed prior to June 26,1984, on any issues presented in this investigation.”
In response to this order and invitation, comments were submitted by Peoples Telephone Company, Oakman Telephone Company, AT & T, and Continental Telephone Company. On June 28, 1984, the APSC issued a “Final Order” in Docket No. 18882 in the “Inquiry: Access Charges” portion of the case. That order approved the access charges tentatively approved in the Commission’s earlier order of June 11, 1984.
On July 6, 1984, AT & T filed an “Application for Reconsideration and Modification and/or Rehearing” which challenged (among other things) the 55% differential in access charges to be paid by AT & T as approved in the June 28, 1984, “Final Order.” On July 10, 1984, GTE Sprint (a private carrier), by letter, requested that it be afforded the opportunity to present testimony in opposition to AT & T’s motion before the APSC.
On August 6,1984, prior to any action on AT & T’s motion for reconsideration/rehearing, the APSC entered its “Final Order” in Docket No. 18882, “Inquiry: General Rate Case,” denying SCB’s request for additional rate relief. The SCB revenue deficiency computations in that order took into account the additional revenues to be produced by the access charges established in the APSC orders of June 11 and 28, 1984. SCB appealed the final order in the general rate case to this Court and applied for supersedeas.
While SCB’s appeal in Docket No. 18882, “Inquiry: General Rate Case,” was pending before the Supreme Court, the APSC issued an order bearing the docket number of 18882 and granting AT & T’s “Application for Reconsideration and Modification and/or Rehearing” and providing a hearing on the application on September 11, 1984.
On August 31, 1984, GTE Sprint filed a motion requesting that the APSC establish a separate docket number for the proceedings involving AT & T’s motion or that GTE Sprint be allowed to intervene in the rehearing. Private carriers MCI Telecommunications Corporation and Delta Communications, Inc., also petitioned the Commission to be allowed to intervene in the rehearing.
On September 10,1984, SCB filed written opposition to GTE Sprint’s motion for a separate docket and leave to intervene in the rehearing. SCB further alleged that the issue of access charges had been fully considered by the APSC in its determination of the general rate case and that the access charges were an “interwoven part” of Docket No. 18882 and “were a fundamental basis” of the APSC’s order in Docket No. 18882 (the general rate case).
At the September 11, 1984, hearing regarding the limited issue raised by AT & T’s motion, MCI, GTE Sprint, and SCB challenged the APSC’s jurisdiction to grant the rehearing. These challenges were overruled; however, MCI and GTE Sprint were allowed to intervene. Testimony was taken on the matter of the differential in access charges between those paid by AT & T and those paid by the private carriers. *703 Briefs were submitted and oral argument was requested but was not held.
On February 15, 1985, the APSC entered an order reducing the differential in access charges from 55% to 35%. SCB’s appeal in the general rate case remained pending before this Court at that time. On March 4, 1985, this Court remanded the general rate case to the APSC for entry of a proposed settlement order. On March 18, 1985, MCI and GTE Sprint appealed from the Commission’s order of February 15, 1985, in AT & T’s access charges rehearing proceedings.
This appeal presents one ultimate issue: Whether the APSC had jurisdiction to consider, as a separate cause, the access charges issue raised by AT & T’s motion for rehearing.
Appellants claim that by virtue of Code 1975, § 37-1-105, the APSC was without jurisdiction to conduct the September 11, 1984, hearing on AT & T’s motion. That statute provides, in part:
“At any time after an order has been made by the commission, any person interested therein may apply for a rehearing in respect to any matter determined therein, and the commission shall grant and hold such rehearing within 60 days after the said application therefor has been filed.”
Appellants argue that the words “the commission shall grant and hold such rehearing within 60 days” are jurisdictional; therefore, they argue, because the rehear.ing in the instant proceeding was held 67 days after AT & T filed its application, the APSC was without jurisdiction to conduct this hearing. This argument, is without merit.
This precise question was before a New York court in Rochester Gas & Electric Corp. v. Maltbie, 272 A.D. 162, 71 N.Y.S.2d 326 (Sup.Ct.1947). In that case the court was faced with a New York statute which provided that a decision of the New York public service commission granting or refusing an application for rehearing “shall” be made within thirty days after the application is made. There, too, the argument was made that the commission’s jurisdiction ended when it failed to grant or deny the requested rehearing within the thirty days. The New York court rejected this argument in a carefully reasoned analysis of both the statutory language and the overall responsibility and jurisdiction of a public agency:
“This sentence when read alone would seem to be mandatory until a study of the authorities has been made which reveals the intention of the legislature with respect to the duties of an official body or an official as being either directory or mandatory. As a general rule, ‘public policy, for the convenience and necessity of government,’ has much to do in the finding that minor details of duties imposed upon a public body or public official are directory and not mandatory .... It is a fundamental principle that the limitation of the time within which a public body is to act does not oust it of jurisdiction to act after the expiration of that time. In this principle the courts have generally concurred. The general rule being that where a public officer is required to perform an official act within a specified time it will be considered as directory only ‘unless the nature of the act to be performed or the language used by the Legislature shows that the designation of the time was intended as a limitation of the power of the officer.’” Rochester Gas & Electric Corp. v. Maltbie, at 71 N.Y.S.2d 329-330. See, also, Ellis Hospital v. Axelrod, 105 Misc.2d 101, 431 N.Y.S.2d 804 (Sup.Ct.1980).
We find no authority for Appellants’ position that the sixty-day time limitation in § 37-1-105 is jurisdictional. We do find, however, in addition to the reasoning set out in Rochester Gas, supra, which we adopt, that § 37-1-103 provides specifically that “substantial compliance” by the APSC with the requirements of Title 37 is sufficient “to give effect to all rules, orders, acts and regulations of the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature, in respect thereto.” Here, the *704 date of the APSC’s rehearing on AT & T’s motion exceeded the sixty-day limit by only 6 days, and Appellants have shown no prejudice, harm, or hardship which occurred as a result of this minor delay. Further, when a similar time limit was analyzed by the Court of Civil Appeals, that court held that, notwithstanding the use of the word “shall” with the deadline, “The purpose of the time periods listed in the [teacher tenure] act is to insure a speedy disposition of teacher tenure cases_ Surely the legislature did not intend for the time limits to be so strictly construed as to preclude some reasonable extension where an undue burden would be'placed on the Board or the teacher.” Key v. Alabama State Tenure Commission, 407 So.2d 133, 135 (Ala.Civ.App.1981).
Appellants MCI and GTE Sprint also argue that the instant controversy is controlled by the holdings in Walker v. APSC, 292 Ala. 548, 297 So.2d 370 (1974), and APSC v. Redwing Carriers, Inc., 281 Ala. 111, 199 So.2d 653 (1967).
“The basic principle is that a case should not be pending in a lower and an appellate court at the same time....
“It has been held that a motion for new trial or an application for rehearing, even if filed prior to the time of taking an appeal cannot be acted upon by the trial court after an appeal is taken.” 292 Ala. at 552, 297 So.2d at 373.
The Walker Court went on to reaffirm the holding in Redwing that the statutory provision allowing for the motion for rehearing or reconsideration before the APSC (§ 37-1-105, Code 1975, formerly Title 48, Section 76 Code 1940) is given the same procedural treatment and interpretation as the motion for new trial in the circuit court. Therefore, claim Appellants, the APSC’s granting of AT & T’s motion for rehearing had the effect of allowing a single cause to be pending before both the Commission and the Supreme Court at the same time — a result prohibited by the holding in Walker.
. Appellees argue, however, that the Walker and Redwing cases are without application here because the access charge issue was consistently treated as a separate inquiry by all parties involved (including the APSC) and was never considered as a part of the general rate case proceedings. We agree and affirm..
Initially, we find that Walker, while an accurate statement of the law in Alabama, is inapplicable in the instant case. In Walker, the motion for rehearing attacked a single and all-encompassing order of the APSC relating solely to the issue of rates Alabama Power Company could charge its customers. The instant appeal, however, presents an altogether different factual basis for questioning the jurisdiction of the APSC. Here, two final orders are involved — final orders which address distinctly separate issues but which both bear the APSC docket number of 18882.
The “separateness” of the two inquiries involved in APSC Docket No. 18882 is apparent in every step taken before the Commission in these proceedings.[1] Unlike Walker, the instant appeal is from an order granting rehearing from a final order which was not appealed to this Court. Rather, while the final order in the general rate case was the subject of a direct appeal to the Supreme Court, the access charge inquiry final order was entered in a separate cause and was not appealed to this Court, making it a proper basis for AT & T’s motion for reconsideration/rehearing.
In support of their argument of the divisibility of the issues of APSC Docket No. 18882, Appellees point out the following language in the APSC’s June 11, 1984, “Further Report and Order,” which gave tentative approval to access charges filed by SCB:
“This Commission intends to retain jurisdiction of this investigation for the pur *705 pose of holding additional hearings and entering further orders as this Commission deems necessary and appropriate. This Commission intends to continue making a full and complete investigation of the access charges proposed by South Central Bell and intends to make all appropriate modifications to the Interim Order, as modified herein, either on its own motion or on the motion of any party. The Commission will continue to receive and review testimony concerning access charges and will hear oral arguments upon the motion of any party to this inquiry.
[[Image here]]
“It is further ORDERED that this Commission expressly retains jurisdiction to take testimony, to further investigate, to further modify the Access Charge tariffs approved herein, and to make such other orders as this Commission deems just.”
This language, say Appellees, is evidence that the APSC specifically retained jurisdiction over the separate issue of access charges. We agree for the following reasons.
First, the above-quoted language does indicate that further consideration was to be given the issue of access charges. Furthermore, after such consideration was given this question, the Commission issued a further order on June 28,1984, giving final approval to the access charges tentatively approved in the June 11, 1984, order. The order of June 28 was entitled “Final Order” and bore the docket notations “Docket No. 18882” and “Inquiry: Access Charges.”
Next, we note that the APSC’s consideration of and deliberations on the issue of the access charges ended with the June 28 final order in the access charge inquiry. We have reviewed the entire August 6, 1984, “Final Order” in the general rate case, and we find that the access charges are merely referred to in the portion entitled “Summary of the Case.” Thereafter, access charges are not addressed by the Commission in that final order as one of the issues to be decided in the general rate case. Indeed, the general rate case final order does not contain the details of, or even references to, the great amount of testimony, evidence, and argument presented during the hearings involving the access charge issue.[2]
Finally, in Section VII of the August 6, 1984, “Final Order” (in the general rate case), entitled “Revenue Requirements,” the access charge determinations made final by the June 28, 1984, order are treated as a “given” — a constant to be taken into consideration as an adjustment to the revenue requirement computations made in the general rate case final order.
We hold that the appeal to this Court of the general rate inquiry portion of APSC Docket No. 18882 in no way affected the jurisdiction of the APSC to consider, on rehearing, issues involved in the separate access charge inquiry. Therefore, the order appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, BEATTY, ADAMS and HOUSTON, JJ., concur.
MADDOX, JONES and SHORES, JJ., re-cused.

. We note that Appellant GTE Sprint, which seeks by this appeal to argue the indivisibility of the various issues of APSC Docket No. 18882, earlier acknowledged the separate character of the access charge issue when it filed a motion requesting the APSC to establish a separate docket for the access charge rehearing.

. This lack of access charge evidence in the general rate case final order is especially apparent in light of that order's 101 pages of detailed recitals of the evidence involving the other issues before the APSC.