651 So.2d 1087 (1994)
J.M.V.
v.
STATE.
CR 93-136, CR 93-248.
Court of Criminal Appeals of Alabama.
May 27, 1994.
Rehearing Denied July 8, 1994.
Certiorari Denied December 22, 1994.
*1088 John C. Robbins, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Cedric Colvin, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1931426 and 1931457.
BOWEN, Presiding Judge.
This is a consolidated appeal from the orders of the Juvenile Court of Jefferson County transferring the appellant, J.M.V., to circuit court for criminal prosecution as an adult for the intentional murder of James W. Primis (Jefferson Juvenile Court case number JU 93-51862, Court of Criminal Appeals case number CR 93-136) and for the first degree robbery of Kimberly Dahlke (Jefferson Juvenile Court case number JU 93-52290, Court of Criminal Appeals case number CR 93-248).

THE MURDER CASE

I
The appellant was charged with the capital offense of intentional murder during a *1089 robbery. See Ala.Code 1975, § 13A-5-40(a)(2). The transfer hearing was held on September 1, 2, and 7, 1993. At the conclusion of that hearing, the juvenile court found probable cause to believe the appellant guilty of noncapital intentional murder and granted the State's motion to transfer. However, on September 7, 1993, the juvenile court entered an order transferring the appellant to circuit court after finding probable cause to believe the appellant guilty of capital murder. C.R. 47.
Rule 28(C), A.R.Juv.P., provides that written notice of appeal in juvenile cases must be filed "within 14 days of the judgment, order or decree appealed from." The appellant thus had until September 21, 1993, to file his notice of appeal from the transfer order. However, no notice was filed.
On October 13, 1993, the juvenile court amended its September 7, 1993, order "on th[at] court's own motion due to inadvertent error." C.R. 48. In that amended order, the juvenile court found probable cause to believe the appellant guilty of noncapital intentional murder.
On October 19, 1993, defense counsel filed a "motion in the nature of a petition pursuant to Rule 32 of the ARCrP for extraordinary relief in filing an out of time notice of appeal." Counsel alleged that he "failed to file a timely Notice of Appeal" because he "was acting under the mistaken assumption that the time for filing the Notice of Appeal was forty-two (42) days." C.R. 40. The juvenile court granted that motion on October 21, 1993, and the appellant filed a notice of appeal on October 22, 1993. We find that the notice of appeal was timely filed.
As defense counsel recognized in his motion (C.R. 42), Rule 32, A.R.Crim.P., does not apply to juvenile transfer hearings. That rule applies to "any defendant who has been convicted of a criminal offense." Rule 32.1.
In this case, the juvenile court had the inherent authority to correct its order.
"Every court must have authority to correct its own entries, so as to make them speak the truth, even after adjournment of court, on sufficient evidence. The source of this inherent power is justice, and therefore the courts must have some discretion in altering their records after the time when they are said to import absolute verity. Gorum v. Samuel, 274 Ala. 690, 151 So.2d 393 [1963], and cases there cited."
Ex parte ACK Radio Supply Co. of Georgia, 283 Ala. 630, 634, 219 So.2d 880, 883-84 (1969). See also Carter v. State, 435 So.2d 137, 141 (Ala.Cr.App.1982) ("[a] judge has the inherent power to correct any clerical error in order to make the court records speak the truth and reflect what actually occurred").
Rule 1, A.R.Juv.P., provides: "If no procedure is specifically provided in these rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to the extent not inconsistent herewith." We have found no case identical to the present case. However, an analogous situation was presented in Wilson v. Leck's 66 Serv. Station, 513 So.2d 620 (Ala.Civ.App.1987).
"Appellees claim that the judgment of November 17, 1986, was amended on November 21, 1986, pursuant to a Rule 60(a) motion for clerical error. Therefore, appellees argue that the rule pertaining to clerical mistakes applies, stating that a corrected judgment relates back to the date of the defective judgment, and the time for taking appeal dates from the date of the original judgment. Faddis v. Woodward Iron Co., 276 Ala. 283, 161 So.2d 486 (1964). However, the rule governing clerical mistakes in judgments contemplates a type of error associated with mistakes in transcription, alteration, or omission of papers and documents, a mistake mechanical in nature which does not involve the legal decision or judgment. Michael v. Michael, 454 So.2d 1035 (Ala.Civ.App.1984). Also, the right under Rule 60, A.R.Civ.P., to correct clerical errors does not authorize the trial court to render a different judgment. Mayer v. Mayer, 491 So.2d 249 (Ala.Civ.App.1986). This is not a case of clerical error but of altering or amending a judgment. Errors which are of a more substantial nature than a clerical error are not to be corrected by way of a Rule 60(a) motion, but should be corrected by a motion under A.R.Civ.P. Rule 59(e) or 60(b). *1090 Carnes v. Carnes, 365 So.2d 981 (Ala.Civ. App.1978), cert. denied, 365 So.2d 985 (Ala. 1979). A court may construe a motion as it is written rather than by the designation assigned it by movant; substance takes priority over form. Swain v. Terry, 454 So.2d 948 (Ala.1984). The court applied the motion as one to alter or amend a judgment under Rule 59(e), A.R.Civ.P. In any event, Rule 59(d) authorizes the court to act on its own motion, and the court may alter a judgment on its own initiative. Ex parte Owen, 420 So.2d 80 (Ala.1982). The time for filing a notice of appeal would not begin to run then as of November 17, 1986, but as of the time that the court acted on the post-trial motion and rendered an amended judgment. Thus, the notice of appeal filed by James Wilson in circuit court was timely."
Wilson, 513 So.2d at 621. Applying similar reasoning, we find that the appellant had 14 days from the date of the juvenile court's amendment of its original order to file notice of appeal. That notice of appeal was filed within 14 days of the amendment and was therefore timely.

II
We reject the appellant's claim that the evidence is insufficient to support the juvenile court's finding of probable cause to believe that the appellant intentionally murdered the victim.
At the transfer hearing the State presented evidence that the victim was killed by gunshot wounds to the head; that a white Cougar automobile was registered in the victim's name; that the victim was last seen at The Quest Club, a bar; that the appellant was seen with a pistol a relatively short time before the murder; that after the murder, the appellant was seen driving the white Cougar automobile registered in the victim's name; that the appellant said that "he had borrowed the car from some guy that he'd met at the [Quest] bar" (R. 73); that he told another person that "[h]e did actually shoot the man" and that "he had to pop a cap in him" (R. 82); that after the victim's death the appellant was with Angie Hale and Tranja Guyot when they cashed a check belonging to the victim; that there was blood in the front and back seats of the Cougar; and that within a few days after the murder, the appellant burned the white Cougar.
We agree with the juvenile court that although the State did not prove beyond a reasonable doubt that the appellant committed the murder, the evidence was sufficient to support a finding of probable cause.
"In order to transfer a juvenile, § 12-15-34 requires, first, that there be probable cause to believe that the child committed the offense alleged (a felony), and, second, at the dispositional phase of the hearing, that it is in the best interest of the child or the public to grant the motion to transfer." Ex parte J.R., 582 So.2d 444, 446-47 (Ala.) (Kennedy, J., dissenting from the quashing of a writ of certiorari), cert. denied, 502 U.S. 837, 112 S.Ct. 122, 116 L.Ed.2d 90 (1991). See also A.D.T. v. State, 630 So.2d 165, 166 (Ala.Cr. App.1993). "[A] transfer hearing is not a hearing to adjudicate the guilt or innocence of the child accused of a crime but is, instead, a probable cause hearing to determine whether the child should be transferred out of the juvenile court for criminal prosecution as an adult." Brown v. State, 353 So.2d 1384, 1387-88 (Ala.1977). At the probable cause phase, the court must find that "a reasonable man would believe the crime occurred and that the defendant committed it." Duncan v. State, 394 So.2d 930, 932 (Ala. 1981).
"It is not necessary, at the transfer hearing, that the state prove beyond a reasonable doubt that the appellant intended to kill the police officers. `[A] transfer hearing is not a hearing to adjudicate the guilt or innocence of the accused, but instead is a probable cause hearing, to determine whether the juvenile should be transferred out of juvenile court for prosecution as an adult.' W.M. v. State, 607 So.2d 1303, 1304 (Ala.Cr.App.1992)."
R.L.S. v. State, 619 So.2d 940, 941 (Ala.Cr. App.1993). See also Ex parte W.T.K., 586 So.2d 850, 851 (Ala.1991); Smith v. State, 475 So.2d 633, 635 (Ala.Cr.App.1985).
"Since the purpose of a hearing of this type is not to determine guilt or innocence, the strict standard of proof beyond a reasonable *1091 doubt has been held not to apply. Brown [v. State, 353 So.2d 1384 (Ala. 1977)]. The only standard which must be met is whether a reasonable man would believe the crime occurred and that the defendant committed it. This Court has further held that we will not interfere with a lower court's order transferring a juvenile to circuit court unless that order is clearly erroneous. Williams v. State, Ala., 361 So.2d 1157 (1978)."
Duncan v. State, 394 So.2d 930, 932 (Ala. 1981). See also Slaton v. State, 555 So.2d 814, 815 (Ala.Cr.App.1989). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1891 (1949). "`The substance of all the definitions' of probable cause `is a reasonable ground for belief of guilt.'" Id.
The appellant's argument in this regard is based on the contentions that the evidence "cast[s] extreme doubt on the testimony given by Robert Simmons" and that "the testimony of John Ticheli is undeniably questionable." Appellant's brief at 7, 9. The appellant lists numerous factual allegations to support his argument, such as: Simmons was incarcerated when he testified, he repeatedly invoked his right against self-incrimination, he was a homosexual, he was intoxicated at the time he said he saw the appellant in the white Cougar, he could not remember an exact date and other specific facts, and he testified that he was threatened by the police at the time he was questioned about this matter. The appellant alleges that Ticheli's testimony is "undeniably questionable" because he had been drinking on the night in question, he did not question the appellant about the white Cougar, he did not report the appellant's arson of the car to the police, he was not wearing his glasses at the time he said he saw the appellant at a specific location, and he was sexually involved with Simmons. These allegations are all directed to the credibility of Simmons and Tichelithe State's two main witnesses.
"`[T]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."' Woodberry v. State, 497 So.2d 587, 590 (Ala.Cr.App.1986).... `"Any doubt, vagueness, or inconsistency in the testimony of a witness [or witnesses] properly goes to the credibility of the witness and is thus a question for the [trier of fact]." Gurganus v. State, 520 So.2d 170, 173 (Ala.Cr.App.1987).'"
D.L. v. State, 625 So.2d 1201, 1204 (Ala.Cr. App.1993). "Credibility determinations are for the trier of fact." Economy Fire & Cas. Co. v. Goar, 551 So.2d 957, 959 (Ala.1989).
"The appellant challenges the sufficiency of the State's evidence on the basis of discrepancies in the State's witness's testimony. `The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Wilcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969).' Walker v. State, 416 So.2d 1083, 1089 (Ala. Cr.App.1982). We must view the evidence in the light most favorable to the State and draw all reasonable inferences and resolve all credibility choices and evidentiary conflicts in favor of the trier of fact. United States v. Irvin, 736 F.2d 1489, 1491 (11th Cir.1984); Gossett v. State, 451 So.2d 437, 439 (Ala.Cr.App.1984)."
Lyle v. State, 497 So.2d 834, 835 (Ala.Cr.App. 1986).
"`[T]he "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."' Tibbs v. Florida, 457 U.S. [31,] 37-38, 102 S.Ct. [2211,] 2216 [, 72 L.Ed.2d 652 (1982)] (emphasis added [in Johnson]. We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d *1092 204 (Ala.1981). `"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."' Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App.1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931))."
Johnson v. State, 555 So.2d 818, 819-20 (Ala. Cr.App.1989).
We find the comments this Court made in connection with a motion to suppress applicable:
"`Although this finding was made on conflicting evidence, the trial court's "credibility choices at suppression hearings are binding on this court." United States v. Aldridge, 719 F.2d 368, 373 (11th Cir.1983). "The trial court's finding [of the voluntariness of the consent to search] will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence." Coots v. State, 434 So.2d 864, 867 (Ala.Cr.App.1983). We indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence. The trial judge was in a better position to judge thereof than this Court having seen the witnesses, observed their demeanor, and heard them testify. Sullivan v. State, 23 Ala.App. 464, 465, 127 So. 256, 257 (1930). In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court. Additionally, if the trial court's ruling is correct for any reason, it will not be reversed because the trial court assigned the wrong reason. Harnage v. State, 290 Ala. 142, 144, 274 So.2d 352, 354 (1972).'"
Kennedy v. State, 640 So.2d 22 (Ala.Cr.App. 1993) (quoting Bradley v. State, 494 So.2d 750, 760-61 (Ala.Cr.App.1985), affirmed, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987)).
Furthermore, we note that the juvenile court was not required to reject the testimony of the State's witness merely because the moral character of some of those witnesses was highly questionable. See Hays v. State, 599 So.2d 1230, 1233 (Ala.Cr. App.) ("`[a] judgment of acquittal "is not required because the government's case includes testimony by `an array of scoundrels, liars and brigands'"'"), cert. denied, ___ U.S. ___, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).
Applying these standards to the probable cause phase of the transfer hearing, we find that the trial court's finding of probable cause is not clearly erroneous.

III
The appellant contends that the prosecutor failed to comply with the requirements of Ala.Code 1975, § 12-15-34(a), which provides:
"The prosecutor may, before a hearing on the petition on its merits and following a consultation with probation services, file a motion requesting the court to transfer the child for criminal prosecution, if the child was 14 or more years of age at the time of the conduct charged and is alleged to have committed an act which would constitute a crime if committed by an adult." (Emphasis added.)
At the conclusion of the transfer hearing, defense counsel moved "to dismiss the petition to transfer on the grounds that they have not met statutory requirements, have not met that test, and, therefore, they are not entitled to an affirmative ruling on their motion to transfer." R. 295. The juvenile court denied defense counsel's motion and had previously stated that the appellant did not have a probation officer and that "[the prosecutor is] not required to [consult with probation services] when the child does not have a probation officer." R. 292.
We find that the provision of § 12-15-34(a) that the prosecutor consult with probation services before filing a motion to transfer is directory only and is not mandatory.
"The process for determining the difference between a statute which is directory and one which is mandatory is discussed in Rodgers v. Meredith, 274 Ala. 179, 146 So.2d 308 (1962). Based upon that opinion and the authorities cited therein it may be stated as a general proposition that a mandatory *1093 statute is one which prescribes, in addition to the requirement of performing the thing specified, the result obtained if that performance is not done; if the statute is directory only, the statute's content is limited to the performance required. Black's Law Dictionary, 5th ed. at 414."
Ex parte Hood, 404 So.2d 717, 718 (Ala.1981).
"`In Alabama Pine Co. v. Merchants' & Farmers' Bank of Aliceville, 215 Ala. 66, 67, 109 So. 358, 359 [1926], correct observation is made that:
"`"There is no universal rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished.
"`"`Generally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done; that is, to matters of substance, are mandatory.' 25 R.C.L. 767, § 14."
"`Again in May v. Head, 210 Ala. 112, 96 So. 869, 870 [1923], Mr. Justice Sayre says:
"`"The court has no authority to look for the legislative intention in anything but the legislative language; that language may be explained; it cannot be detracted from or added to. The office of interpretation is not to improve the statute; it is to expound it; and the court knows nothing of the intention of an act, except from the words in which it is expressed, applied to the facts existing at the time. Endlich on Interp. of Stat. §§ 7, 8."' Board of Education of Jefferson County v. State, 222 Ala. 70, 74, 75, 131 So. 239, 243 [1930]."
Rodgers v. Meredith, 274 Ala. 179, 182, 146 So.2d 308, 310 (1962).
"`A mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding; and a statute may be mandatory in some respects, and directory in others.'
"82 C.J.S. Statute at § 374 (1953) (footnotes omitted).
"`There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory. However, in the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent. The legislative intent must be obtained from all the surrounding circumstances, and the determination does not depend on the form of the statute. Consideration must be given to the entire statute, its nature, its object, and the consequences which would result from construing it one way or the other.... [T]he language of a statute, however mandatory in form, may be deemed directory whenever legislative purpose can best be carried out by such construction, and the legislative intent does not require a mandatory construction; ...
"`In the application of subsidiary rules for the determination of the legislative intent in this respect there is no small confusion in the decisions, but certain principles have been recognized as established. Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form, and what is a matter of essence can often be determined only by judicial construction. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct *1094 of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results....'
"Id. at § 376 (footnotes omitted)."
Brasher v. State, 555 So.2d 184, 190-91 (Ala. Cr.App.1988), affirmed, 555 So.2d 192 (Ala. 1989) (involving statute allowing videotaped deposition of child witness. See also MCI Telecommunication, Inc. v. Alabama Public Service Commission, 485 So.2d 700, 703 (Ala. 1986) ("`It is a fundamental principle that the limitation of the time within which a public body is to act does not oust it of jurisdiction to act after the expiration of that time. In this principle the courts have generally concurred. The general rule being that where a public officer is required to perform an official act within a specified time it will be considered as directory only "unless the nature of the act to be performed or the language used by the Legislature shows that the designation of the time was intended as a limitation of the power of the officer."'"), overruled on other grounds, Ex parte Andrews, 520 So.2d 507 (Ala.1987).
The statute does not affirmatively require a prosecutor to consult with probation services before filing a motion to transfer. The statute prescribes no result for a failure to engage in such consultation. There is no contention that the prosecutor is bound by the advice of probation services. Such a contention would be untenable. "The decision of whether or not to seek to proceed against a juvenile in an adult criminal proceeding is an adversarial decision particularly within the scope of the prosecuting authorities who must carry the burden of proof." Ellington v. State, 512 So.2d 802, 804 (Ala. Cr.App.1987).
Furthermore, in stark contrast to every other subsection of § 12-15-34, subsection (a) does not contain the word "shall": "The court shall conduct a hearing ...," § 12-15-34(b); "[T]he court shall proceed as provided in section 12-15-70 ...," § 12-15-34(c); "Evidence of the following and other relevant factors shall be considered ...," § 12-15-34(d); "[A] study and report to the court ... shall be made by probation services," § 12-15-34(e); "[T]he court shall set forth in writing its reasons for granting the motion ...," § 12-15-34(f). (Emphasis added.) We conclude that had the legislature intended to mandate that the prosecutor consult with probation services before the filing of a petition for transfer, it would have included the word "shall" in subsection (a) just as it did in every other subsection of § 12-15-34. Compare Ex parte Brasher, 555 So.2d 192, 195 (Ala.1989) ("[w]hen determining whether `shall' is mandatory, `the prime object is to ascertain the legislative intent, as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished' ").
We find that § 12-15-34(a) is directory only and that the juvenile court properly denied the appellant's motion to dismiss.

IV
The appellant asserts that the juvenile court did not properly consider the factors set out in § 12-15-34(d) in granting the transfer. This argument is based on testimony at the transfer hearing that the appellant did not derive any benefit from the juvenile system's "Drug Free" program because he did not complete it, evidence indicating a "possible drug abuse problem" that could be addressed in the juvenile system (Appellant's brief at 13), the testimony that there is "no rehabilitation that comes out of the adult system" (R. 290), and the "insufficient body of evidence ... presented as to the nature of the alleged offense" (Appellant's brief at 13). We reject this argument.
At the beginning of the transfer hearing, the juvenile judge specifically listed, in open court, the "six factors which I must consider, and I must consider all of them in making a decision about where you should stand trial." R. 12-15. The juvenile judge stated her findings as to some of those factors at the conclusion of the hearing. R. 298-305. In her order of transfer, the juvenile judge stated that she had "considered all of the factors contained in Section 12-15-34" and then listed each factor. C.R. 47.

*1095 "`"The decision to transfer a juvenile for prosecution as an adult is a judicial one,... involving a mandatory consideration of each of the factors enumerated in Section 12-15-34(d).... While `legislation compels consideration of each of the six factors,' Reeves [v. State, 419 So.2d 217, 218 (Ala.1982)], the weight to be given each of those factors in balancing the interests of the juvenile and society must be left to the sound discretion of the juvenile court judge. Even though some of the factors may indicate that it would be in the best interest of the child and the public to treat the youth as a juvenile, the judge may still order treatment as an adult after weighing all the factors and circumstances involved."
"`. . . .
"`... The trial judge can assign appropriate weight to the six factors listed in § 12-15-34(d) as well as other relevant circumstances. The statute does not require that specific weights be assigned to different factors and circumstances. Consequently, the trial judge is free to consider each case individually and balance the particular circumstances involved.'
"Williams v. State, 494 So.2d 887, 890 (Ala. Cr.App.1986) (emphasis in original). See also J.S.A. v. State, 615 So.2d 1288 (Ala.Cr. App.1993); T.J. v. State, 611 So.2d 1116, 1118 (Ala.Cr.App.), cert. denied, 611 So.2d 1118 (Ala.1992); A.M. v. State, 621 So.2d 369 (Ala.Cr.App.1992)."
A.W.M. v. State, 627 So.2d 1148, 1155 (Ala. Cr.App.1993).
In particular, we note the following finding of the juvenile judge at the conclusion of the transfer hearing:
"And I know that [J.M.V.] steals cars. That's his history. Or he's involved with people who steal cars, one or the other.
"[J.M.V.]The juvenile system, as you say, is limited to what it can do but it's not as limited as it used to be. And in Jefferson County we have quite a few services for children we didn't use to have, one of the best ones being the Drug Free Program, which requires families to participate because families are part of the problem.
"And [J.M.V.]And U-Turn is another one that was begun by Mr. Art Franklin. And I frankly think [J.M.V.] has been through everything we have, except being locked up somewhere, and he did not take advantage of them.
"Now, I'm not required by any law to offer [J.M.V.] two or three chances on all of these things. In fact, he's had two or three at DYS. The other thing is he's eighteen years of age now, and there's very little to offer him.
"But beingeven that being as it may, given the circumstances of this case, given the treatment efforts not just in this county but in others, given prior treatment possibilities, his response has been relatively poor except when he's under very structured locked-up kind of situations.
". . . .
"... But as far as his demeanor, I don't see anything wrong with his demeanor. He's physically and mentally certainly mature. Whether he's psychologically stable or not, he's certainly smart enough. [J.M.V.] is of average intelligence.
". . . .
"But I will say that as much as I like [J.M.V.], he does not, for all those factorshe's definitely a danger to the community. I mean, you know, it's like somebody out in their car and something and this is what happens. I find that very dangerous to this community. And I don't think that [J.M.V.]I do see him as a threat because he has never conformed his behavior with any kind of rules of society from little biddy things to big things. He steals from his mother, does one thing and another, just lots of problems." R. 299-303.
Our review of the record in this case convinces this Court that the juvenile court evaluated the underlying circumstances of the offense and the offender in addition to the required statutory factors. We hold that the order of transfer on the charge of murder is supported by clear and convincing evidence.

THE ROBBERY CASE

I
In this case, the appellant adopts the arguments he advanced in Parts III and IV of *1096 "The Murder Case" section of this opinion. We reject those arguments for the reasons stated above. We note that the transfer order of the juvenile court in the robbery case contains a statement that the court considered each of the six factors enumerated in Ala.Code 1975, § 12-15-34(d). We hold that the order of transfer on the charge of robbery is supported by clear and convincing evidence.

II
The appellant argues that the evidence presented at the transfer hearing in the robbery case which was held after the appellant's transfer had been ordered in the murder case, is insufficient to support the juvenile court's finding of probable cause to believe the appellant guilty of robbery in the first degree. We find that the state presented sufficient evidence to support the juvenile court's finding of probable cause.
Kimberly Dahlke testified that June 19, 1993, was her first day to work at the "Snow Shack" or "Hawaiian Shaved Ice." R. 11.[1] She stated that she was robbed about 6:50 that evening and she identified the appellant as the robber. She testified that the appellant was armed with a pistol and that during the robbery he fired one shot and took money out of a drawer. She identified the appellant from a photographic lineup.
Dawn Shannon identified the appellant as the individual she saw running from the Snow Shack immediately after the robbery.
Naomi Bullock identified the appellant as the individual she almost hit with her automobile in the parking lot as he was running from the shaved ice stand after the robbery.
In the context of similar evidence presented at a jury trial, we have stated:
"Here there was sufficient legal evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of this robbery in the first degree. `"The testimony of the victim of the alleged robbery which was offered to establish the identity of the appellant as one of the alleged robbers presented a jury question on that matter."' Lomax v. State, 359 So.2d 832, 835 (Ala.Cr. App.), cert. denied, 359 So.2d 836 (Ala.), cert. denied, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978). `The victim made a positive and unequivocal in-court identification of the appellant. Therefore, whether the appellant was guilty of robbery was a jury question. Vaughn v. State, 57 Ala. App. 134, 326 So.2d 662 (1976). Testimony of the victim of the alleged robbery which was offered to establish the identity of the defendant as the alleged robber presented a jury question on that issue. Lambert v. State, 55 Ala.App. 669, 318 So.2d 364 (1975).' Baker v. State, 344 So.2d 547, 551 (Ala.Cr.App.1977)."
Walker v. State, 631 So.2d 294, 301 (Ala.Cr. App.1993). The evidence presented by the State at the transfer hearing would have been sufficient, in a jury trial, to establish a prima facie case of robbery in the first degree. This evidence amply supports the juvenile court's finding of probable cause.
The judgments of the juvenile court ordering the transfer of the appellant in the murder and in the robbery cases are affirmed.
AFFIRMED.
All Judges concur.
NOTES
[1] Page references in "The Robbery Case" portion of this opinion are to the record in Jefferson Juvenile Court case number JU 93-52290, Court of Criminal Appeals case number CR 93-248.